UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HYDE PARK COMMUNICATIONS, INC.<br>1101 17th St., NW<br>Suite 508<br>Washington DC 20036<br><br>JEFFREY SANDMAN<br>5006 Tilden Street, N.W.<br>Washington, DC 20016<br><br>    Plaintiffs,<br><br>    v.<br><br>PAUL DELPONTE<br>11114 Hillsdale Drive<br>Kensington, MD 20876<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) Case Number: _____<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT

(Diversity Jurisdiction; Breach of Contract; Intentional Infliction of Emotional Distress; Uniform Trade Secrets Act; Replevin; Compensatory and Punitive Damages; Injunctive Relief andDeclaratory Judgment)

Plaintiffs Jeffrey Sandman and Hyde Park Communications, Inc., by their undersigned counsel, bring this diversity action for breach of contract, intentional infliction of emotional distress, violation of the District of Columbia Uniform Trade Secrets Act, replevin, and declaratory judgment against defendant Paul DelPonte, seeking compensatory and punitive damages, injunctive relief, and attorney's fees. In support of their claims, plaintiffs Jeffrey Sandman and Hyde Park Communications, Inc. allege as follows.

## PARTIES

1

1. Plaintiff Hyde Park Communications, Inc. is a corporation organized and operating under the laws of the District of Columbia, with its principal place of business at 1101 17th Street, N.W., Washington, DC 20036 (hereinafter "Hyde Park").

2. Plaintiff Jeffrey Sandman is an adult citizen of the District of Columbia residing at 5006 Tilden Street, N.W., Washington, DC 20016 (hereinafter "Sandman").

3. Defendant Paul DelPonte is an adult citizen of the State of Maryland, residing at 11114 Hillsdale Drive, Kensington, MD 20876 (hereinafter "DelPonte").

**JURISDICTION AND VENUE**

4. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332, in that this case presents a controversy between citizens of different states in which the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000).

5. Immediate injunctive relief is sought pursuant to Federal Rule of Civil Procedure 65 and Local Rule 65.1.

6. Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(a)(2) & (3).

7. For the reasons alleged particularly below, this Court has personal jurisdiction over DelPonte pursuant to D.C. Code Ann. § 13-423.

**ALLEGATIONS OF FACT COMMON TO ALL CLAIMS**

8. Hyde Park is a public affairs, corporate communications, and media relations firm with a clientele that includes Fortune 500 companies, major foundations, and national advocacy and membership organizations.

9. At all times during the facts alleged in this Complaint, Sandman has been an officer and director of Hyde Park.

10. Between February 8, 2000, and December 5, 2005, DelPonte served as an employee of Hyde Park.

11. Pursuant to a shareholder agreement that was entered into on or about January 1, 2001 (hereinafter the "Shareholder Agreement"), DelPonte became the owner of one hundred and seventy-five (175) shares of common stock of Hyde Park.

12. Pursuant to the Shareholder Agreement, Sandman became the owner of seven hundred (700) shares of common stock of Hyde Park and is the majority shareholder of Hyde Park.

13. On or about February 8, 2000, Hyde Park and DelPonte became bound by an employment agreement (hereinafter the "Employment Agreement") whereby DelPonte accepted a position as an employee of Hyde Park. A copy of the Employment Agreement is attached hereto as Exhibit 1 and is incorporated herein by reference

14. In connection with DelPonte's employment at Hyde Park, DelPonte had access to the books and records of Hyde Park and the confidential information contained therein, including the identity of representatives of Hyde Park's clients and members of the media with whom Hyde Park has conducted business on behalf of its clients.

15. In consideration of the benefits and opportunities provided by Hyde Park to DelPonte, DelPonte agreed in the Employment Agreement in paragraph 8 to the following restrictions:

> 8. <u>Restrictive Covenants</u>.

(a) Non Disclosure/Confidentiality: [DelPonte] acknowledges and agrees that:

(i) the work he is retained to perform for [Hyde Park] necessarily involves [DelPonte's] having access to certain confidential and proprietary information, including, but not limited to, techniques, procedures, technical data, marketing strategies, lists of [Hyde Park's] Clients and vendors, [Hyde Park's] Client and vendor relationships, financial information, and other similar information or documents developed or acquired by [Hyde Park] (including all information developed or acquired by [DelPonte] in the course of his employment with [Hyde Park]) (the "Confidential Information");

(ii) the Confidential Information is a valuable, asset of [Hyde Park]; [Hyde Park] has a legitimate business interest in protecting its confidentiality; and [Hyde Park] has implemented such practices and measures as are reasonably necessary to preserve and to protect its confidentiality;

(iii) [DelPonte] shall not use the Confidential Information or use or exploit any relationships developed during her retention with [Hyde Park] in any manner other than in furtherance of [Hyde Park's]'s interests; and

(iv) [DelPonte] shall maintain all Confidential Information in the strictest confidence; shall not disclose the Confidential Information to any person or entity outside [Hyde Park] during the term hereof and for a period of five years subsequent to his termination, whether such termination is voluntary or involuntary; and shall return any Confidential Information in tangible form to [Hyde Park] upon such termination.

16. In consideration of the benefits and opportunities provided by Hyde Park to DelPonte agreed in the Employment Agreement in paragraph 9 to the following remedies in the event of a breach by him of the foregoing restrictions:

(a) The parties hereto acknowledge and stipulate that breach of the restrictive covenants set forth in Paragraph 8 would irreparably harm [Hyde Park] and cause significant damage and loss to [Hyde Park] and that, in such event, [Hyde Park] would have no adequate remedy at law. The parties further acknowledge that money damages for such breach are difficult, if not impossible, to calculate and that the most appropriate relief in the event of breach would be injunctive relief. In the event of a breach or threatened breach by [DelPonte] of any of the provisions of the restrictive covenants set forth in Paragraph 8, and notwithstanding Paragraph 9(b) respecting arbitration, [Hyde Park] shall be

entitled to entry of a temporary or permanent injunction, without bond of any kind, restraining [DelPonte] and his employer, affiliate, partner, or joint venturer from directly or indirectly providing professional services in violation of the restrictive covenants. [DelPonte] agrees to pay to [Hyde Park] all costs and expenses, including reasonable attorney's fees, as may be incurred by [Hyde Park] relative to obtaining a temporary or permanent injunction.

(b) Any controversy or claim arising out of or relating to this Agreement, other than a controversy or claim arising out of breach of the restrictive covenants set forth in Paragraph 8, shall be finally resolved by arbitration pursuant to the Commercial Arbitration Rules of the American Arbitration Association. Any such arbitration shall take place in Washington, D.C., before a single arbitrator chosen in accordance with such Rules. The arbitrator shall include arbitration costs and attorneys' fees in the award to the prevailing party in any such proceeding. The award in such proceeding shall be final and binding on the parties, and judgment on the arbitrators' award may be entered in any court having the requisite jurisdiction. Nothing in this Agreement shall require the arbitration of disputes between the parties that arise from actions, suits or proceedings instituted by third parties.

17. Additionally, Hyde Park requires that all of its executives sign restrictive covenants and provides to all of its all its employees, including DelPonte, an employee manual which recites company-wide policies. Of specific importance are the following policies:

**<u>112 Non-Disclosure</u>**

The protection of confidential business information and trade secrets is vital to the interests and the success of Hyde Park Communications. Such confidential information includes, but is not limited to, the following examples:

* non-public client information
* compensation data
* customer lists
* customer preferences
* financial information
* pending projects and proposals
* research and development strategies

All employees may be required to sign a non-disclosure agreement as a condition of employment. Employees who improperly use or disclose trade secrets or confidential business information will be subject to disciplinary action, up to and including termination of employment, even if they do not actually benefit from the

disclosed information.

**180 General Office Policies**

    4.    All client and firm related matters, including clients' plans and strategies, marketing information, regulatory issues, etc. should be treated as strictly confidential unless they have been made public. This is an important issue and relates directly to our credibility and reputation in our role as trusted advisor to our clients. In addition, all Hyde Park internal matters, including proposals and firm business strategy should be treated as confidential. Please place all confidential matters in your drawers when leaving the office and shut off your computer. Personnel matters. All personnel issues, including compensation matters are strictly confidential.

A copy of the relevant pages of the employee manual are attached hereto as Exhibit 2 and incorporated herein by reference.

    18.    On or about December 5, 2005, DelPonte's employment with Hyde Park terminated. DelPonte remains a shareholder of Hyde Park.

    19.    DelPonte has claimed that Hyde Park owes him money for back salary and for dividends on his stock. Hyde Park has respectfully refused those claims.

    20.    Under the Shareholders Agreement, DelPonte may be entitled to have his shares purchased by the Hyde Park prior to March 30, 2006.

    21.    Hyde park and DelPonte exchanged proposals in an unsuccessful attempt to resolve all claims between the parties.

    22.    On March 30, 2006, DelPonte sent a letter by facsimile to Hyde Park and Sandman that contained false statements and evidenced a breach by DelPonte of the Employment Agreement and of the District of Columbia Uniform Trade Secrets Acts. D.C. Code, 36-401 <u>et seq</u>. (hereinafter, the "March 30 Letter"). A copy of the March 30 Letter is being filed under seal and its terms are incorporated herein by reference.

23. Among the false assertions in the March 30 Letter, DelPonte accused Sandman of "disturbing attempts to withhold company profits that have already been reported to the IRS." Such language is reasonably understood to mean that Hyde Park wrongfully failed to remit amounts actually owed to IRS.

24. Moreover, neither the Shareholder Agreement nor the law gives DelPonte, or any other Hyde Park shareholder, the ability to compel a distribution. Pursuant to the Shareholder Agreement, the Board of Directors may authorize a distribution if, in its sole judgment, such a distribution is in the best interests of the corporation and the corporation has net assets adequate to support the distribution.

25. DelPonte also stated falsely that Sandman "randomly picked" an "artificial" deadline of March 18, 2006, for DelPonte to obtain health coverage for the month of April and that Sandman did this as "a bargaining tool in an attempt to force me to settle for an offer drastically undervaluing the money you and Hyde Park Communications owes me."

26. When DelPonte left the company's employ in December 2005, DelPonte was told that Hyde Park could and would as a courtesy at his expense maintain his coverage for three months to the end of March 2006. Hyde Park has no obligation to keep DelPonte on its health insurance policy thereafter.

27. In an email from Hyde Park's counsel to DelPonte's counsel, dated February 23, 2006, Hyde Park presented a settlement proposal that included an extension of health insurance coverage through June 2006 (after the company first learned that this was feasible), with an indication that the premium payments would have to be made by the 15th day of the previous month.

28. In a subsequent email between counsel dated March 9, 2006, Hyde Park extended the deadline for acceptance of the proposal and payment of the April premium to March 18. The deadline was intended to give Hyde Park sufficient notice so that either the premium could be remitted if the parties reached an agreement and DelPonte elected coverage or notice of termination of coverage could be delivered if no settlement was reached or DelPonte elected not to be covered.

29. DelPonte further falsely asserted that his attorney "specifically asked if the March 18 deadline that [Sandman] randomly picked to discontinue my health insurance was in fact correct. There was no response from you or your attorney." As a result, according to DelPonte, he "was denied purchasing a new policy from another insurance carrier because I was told I already had a policy from Hyde Park."

30. Neither Sandman nor Hyde Park ever received any letter from DelPonte's attorney inquiring whether the March 18 deadline "was in fact correct." Instead, Sandman and Hyde Park received a letter dated March 23 confirming that Mr. DelPonte's health insurance would be lapsing (as was correct) and requesting notice only if Hyde Park's understanding were otherwise. Sandman and Hyde Park did not respond because their understanding agreed with DelPonte's.

31. DelPonte also falsely asserted that his trouble obtaining health insurance was actually a result of Sandman's "twisted game of Catch 22 [which] came dangerously close to putting scheduled surgery for my son next week at risk."

32. As noted in paragraph 27, Sandman did not engage in any "game" of Catch 22; nor did he do anything improper.

33. DelPonte closed the March 30 Letter with a carbon copy list of twenty-one

8

individuals to whom DelPonte indicated he had sent or intended to send the letter.

34. The Individuals listed on the carbon copy list consisted of representatives of Hyde Park's clients and members of the media with whom Hyde Park has conducted business on behalf of its clients. The clients whose representatives appeared as addressees constituted more than fifty percent (50%) in value of Hyde Park's historic revenues.

35. Sandman became justifiably distraught that the distribution to the persons on this list of the false and inflammatory contents of the March 30 Letter would destroy the reputation and goodwill that Sandman had established over decades of diligent work. As a result, Sandman suffered great anxiety, including difficulty eating, sleeping, concentrating, and carrying on the other usual activities of living.

36. In order to mitigate the unwarranted injury likely to flow from the March 30 Letter, Sandman sent a letter to the individuals listed on the carbon copy list of that letter, stating that the complaints had no merit (hereinafter the "March 31 Letter"). A copy of the March 31 Letter is attached hereto as Exhibit 3 and incorporated herein by reference.

37. On April 3, 2006, Hyde Park's attorney sent a letter to DelPonte's attorney in which he raised concerns about the veracity of the contents of March 30 Letter, the letter's publication to third parties, and resulting defamation, violation of trade secrets law, and breach of the Employment Agreement (hereinafter the "April 3 Letter"). A copy of the April 3 Letter is attached hereto as Exhibit 4 and its terms are incorporated herein by reference.

38. In the April 3 Letter, Hyde Park's attorney requested that DelPonte apologize for his defamatory remarks and refrain from any further publication. The April 3 Letter stated that Sandman and Hyde Park are entitled to seek injunctive relief and reserve the right to do so.

39. On April 5, 2006, DelPonte's attorney wrote to Hyde Park's lawyer that, notwithstanding the appearance of the carbon copy list, the March 30 Letter was sent only to Sandman and that DelPonte would not apologize (hereinafter the "April 5 Letter"). A copy of the April 5 Letter is attached hereto as Exhibit 5 and its terms are incorporated herein by reference.

40. The April 5 Letter does not state that DelPonte will not yet send the letter to the individuals on the carbon copy list or any other persons.

41. At the time that DelPonte sent the March 30 Letter, DelPonte possessed a laptop computer that had been furnished to him by Hyde Park and on which resided data about Hyde Park's clients, their representatives, and members of the media with whom Hyde Park conducts business.

42. DelPonte had not returned the computer to Hyde Park despite numerous demands therefore and continues wrongly to retain the computer. Hyde Park has been compelled to purchase and program a replacement computer.

43. The information about representatives of Hyde Park's clients and members of the media with whom Hyde Park conducts business on behalf of its clients constitutes "confidential information" pursuant to the Employment Agreement and a trade secret pursuant to the District of Columbia Uniform Trade Secret Act.

44. Pursuant to paragraphs 9(e) and (f) of the Employment Agreement, Hyde Park is entitled to the following liquidated damages for DelPonte's violation of paragraph 8(a):

> (e) In addition to the above, any breach of Paragraph 8 hereof shall also be deemed an automatic forfeiture on the part of [DelPonte] of any payments or amounts due or to become due to [DelPonte] pursuant to this Agreement or otherwise arising from, directly or indirectly, his retention by [Hyde Park], including, but not limited to, salary, bonuses, retirement, pension, profit sharing,

deferred compensation, or other benefits and any payments due him under the Operating Agreement.

(f)     All remedies given to [Hyde Park] by this [Employment Agreement] shall be construed as cumulative remedies and shall not be alternative or exclusive remedies.

## COUNT ONE
## Breach of Contract

45.     The allegations of paragraphs 1 through 42 are incorporated herein by reference with the same force and effect as if set forth in full below.

46.     DelPonte breached the Employment Agreement when he used the names of representatives of Hyde Park's clients and members of the media with whom Hyde Park conducts business on behalf of its clients in a manner other than in furtherance of Hyde Park's interests.

47.     DelPonte breached and is continuing to breach the Employment Agreement by not returning the laptop computer, and the confidential information it contains, upon the termination of his employment.

48.     As a consequence of the foregoing, Hyde Park has suffered and will continue to suffer irreparable harm and loss.

WHEREFORE, Hyde Park respectfully requests that the Court take the following actions:

(1)     Pursuant to the Employment Agreement and Federal Rule of Civil Procedure 65 and Local Rule 65.1, enter a temporary restraining order and preliminary injunction prohibiting DelPonte from violating the terms of the Employment Agreement;

(2)     Award compensatory damages in an amount to be determined at trial; and

(3)     Pursuant to the Employment Agreement, award all costs and expenses, including

reasonable attorney's fees, Hyde Park incurs in obtaining a temporary or permanent injunction.

## COUNT TWO
### Intentional Infliction of Emotional Distress

49. The allegations of paragraphs 1 through 42 are incorporated herein by reference with the same force and effect as if set forth in full below.

50. DelPonte intentionally committed outrageous and extreme acts, as alleged herein, when he sent the inflammatory and defamatory March 30 Letter to Sandman without disclosing until April 5, 2006, and only in response to Sandman's counsel's letter to DelPonte's attorney, that he had only sent the March 30 Letter to Sandman and not the individuals listed on the carbon copy list, as those acts were intended inflict emotional distress on Sandman, to harass Hyde Park and Sandman, to intimidate Hyde Park and Sandman into acceding to certain of DelPonte's improper demands, and to cause fear of pecuniary loss and of loss of reputation and goodwill with Hyde Park's clients, their representatives, and members of the media with whom Hyde Park conducts business on behalf of its clients.

51. In the alternative, DelPonte engaged in outrageous and extreme acts with reckless disregard for the probability of causing Sandman severe emotional distress when he sent the March 30 Letter to Sandman without disclosing until April 5, 2006, that he had only sent the March 30 Letter to Sandman and not the individuals listed on the carbon copy list.

52. DelPonte wrongful actions caused Sandman severe emotional distress.

WHEREFORE, Sandman respectfully requests as relief in this Action that the Court award Hyde Park:

(1) Compensatory damages in an amount to be determined at trial;

(2) Punitive damages in an amount to be determined at trial;

(3) Its costs and expenses, including reasonable attorney's fees; and

(4) Such other and further relief as the Court determines just and proper.

## COUNT THREE
### Misappropriation of Trade Secrets, D.C. Code §§ 36-401 et seq.

53. The allegations of paragraphs 1 through 42 are incorporated herein by reference with the same force and effect as if set forth in full below.

54. The books and records of Hyde Park, the confidential information contained therein, and especially the identity of representatives of Hyde Park's clients and members of the media with whom Hyde Park conducts business on behalf of its clients, constitute a trade secret pursuant to D.C. Code Ann. 36-491(4).

55. This information derives independent economic value by not being accessible through proper means to third parties, including actual and potential competitors who can profit from its use or disclosure.

56. Hyde Park has taken more than reasonable measures under the circumstances to maintain the secrecy of this information, including having DelPonte sign the Employment Agreement, having its executives execute a restrictive covenant, and establishing and implementing additional policies prohibiting use and disclosure of such information outside of Hyde Park.

57. Pursuant to D.C. Code Ann. § 36-401(2)(B)(ii)(I), DelPonte misappropriated Hyde Park's trade secrets when he used improper means to retain information about representatives of Hyde Park's clients and members of the media with whom Hyde Park conducts

business on behalf of its clients subsequent to the termination of his employment, without any implied or express consent, and then used that information to intimidate and inflict emotional distress on Sandman through purported disclosure to the persons on the carbon copy list.

58. Pursuant to D.C. Code Ann. § 36-401(2)(B)(II), DelPonte misappropriated Hyde Park's trade secrets when he used information about representatives of Hyde Park's clients and members of the media with whom Hyde Park conducts business on behalf of its clients without any express or implied consent, that was acquired under circumstances that gave rise to a duty to maintain its secrecy or limits its use, and then used that information to intimidate and inflict emotional distress on Sandman through threatened disclosure to the persons on the carbon copy list.

59. DelPonte's activities in misappropriating Hyde Park's trade secrets are ongoing and will not cease absent injunctive relief.

60. DelPonte's misappropriation is willful and malicious.

61. Hyde Park has suffered actual loss based on DelPonte's threatened and actual misappropriation in that Hyde Park had to alert its client and media contacts to the wrongful character of the March 30 Letter and to suffer consequent loss of goodwill and reputation..

WHEREFORE, Hyde Park respectfully requests as relief in this Action that the Court:

(1) Enter a temporary restraining order and preliminary injunction pursuant to D.C. Code § 36-402 for actual and threatened misappropriation of Hyde Park's trade secrets;

(2) Award damages for actual loss caused by the misappropriation in an amount to be determined and requested at trial; and

(3) Award exemplary damages

(4) Award reasonable attorney's fees pursuant to D.C. Code § 36-404(3) in an amount to be determined and requested at trial.

## COUNT FOUR
### Replevin

62. The allegations of paragraphs 1 through 42 are incorporated herein by reference with the same force and effect as if set forth in full below.

63. Hyde Park has demanded the return of the laptop computer, its software, and data contents, including but not limited to all information related to Hyde Park's clients, their agents, and members of the media with whom Hyde Park conducts business, but DelPonte has refused Hyde Park's demand.

64. Hyde Park sues DelPonte for unjustly detaining Hyde Park's laptop computer, its software, and data contents, including but not limited to all information related to Hyde Park's clients, their agents, and members of the media with whom Hyde Park conducts business of a value of $100,000.

65. Hyde Park claims that the same be taken from DelPonte and delivered to Hyde Park; or if they are eloigned or concealed, that Hyde Park may have judgment of their value and all mesne profits and damages, which Hyde Park estimates at $100,000 besides costs.

WHEREFORE, Hyde Park requests that the Court schedule a hearing on the same dates as the temporary restraining order and preliminary injunction with prior notice to defendant to determine whether a writ of replevin should be issued for immediate seizure and delivery of the property to Hyde Park, and Hyde Park demands judgment against DelPonte for the recovery of

possession of the property and damages for its taking and detention, with interest and costs.

## COUNT 5
### Declaratory Judgment

66. The allegations of paragraphs 1 through 42 are incorporated herein by reference with the same force and effect as if set forth in full below.

67. Upon the violation of Section 8(a) of the Employment Agreement, Hyde Park is entitled to liquidated damages equal to the following:

> an automatic forfeiture on the part of Executive of any payments or amounts due or to become due to [DelPonte] pursuant to this [Employment Agreement] or otherwise arising from, directly or indirectly, his retention by [Hyde Park], including, but not limited to, salary, bonuses, retirement, pension, profit sharing, deferred compensation, or other benefits and any payments due him under the Operating Agreement.

68. DelPonte breached the Employment Agreement when he used the names of Hyde Park's clients and their agents in a manner other than in furtherance of Hyde Park's interests.

69. DelPonte breached and is continuing to breach the Employment Agreement by not returning the confidential information stored in the laptop computer upon the termination of his employment.

70. DelPonte has claimed that Hyde Park owes him additional sums pursuant to the Employment Agreement and otherwise.

Pursuant to 28 U.S.C. § 2201, there exists an actual controversy which requires this Court to declare the rights and other legal relations with regard to the forfeiture by DelPonte of any amount owed to him by Hyde Park given his violation of the terms and conditions of paragraph 8(a).

71. A declaratory judgment entered by this Court will serve to terminate the

uncertainty or controversy between the parties regarding this issue.

WHEREFORE, Hyde Park requests that the Court enter a declaratory judgment:

(a)     Finding that DelPonte violated the terms and conditions of paragraph 8(a) and, therefore, pursuant to paragraphs 9(e) and (f) of the Employment Agreement, has forfeited his right to the amounts he claims as owed to him by Hyde Park.

(b)     Granting Hyde Park such other and further relief that it may be entitled to receive.

Respectfully submitted,

SPIRER & GOLDBERG, P.C.

_____/s/_____
Fred B. Goldberg
Bar #279893
7101 Wisconsin Avenue
Suite 1201
Bethesda, MD 20814
Attorney for Plaintiffs